AFFIDAVIT OF JESSICA M. THOMPSON

I, Jessica M. Thompson, being duly sworn, state as follows:

INTRODUCTION

1. I am a Special Agent with the United States Department of Housing and Urban Development, Office of Inspector General ("HUD/OIG"), and have been so employed since May 2003. I am currently assigned to the Boston Field Division in Boston, Massachusetts. I am also assigned to the Department of Homeland Security, Document and Benefit Fraud Task Force. My current duties include, amongst other duties, conducting criminal and civil investigations involving fraud, waste and abuse in HUD programs. This includes investigating financial crimes involving funds belonging to HUD or mortgages insured by the Federal Housing Administration. During the investigation of these cases, I have initiated and/or participated in the execution of more than a dozen arrests and search warrants and have been the affiant on several arrest and search warrants. I have also initiated and/or participated in the interviews of witnesses, defendants, and subjects pertaining to various criminal violations.

2. I have been a Federal Law Enforcement Officer since July 2000, having previously served as a Special Agent for the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations. In 2000, I attended and graduated from the Criminal Investigator Training Program and the Inspector General Training Program that were taught at the Federal Law Enforcement Training Center. I have also attended numerous specialized training courses and seminars, where I received additional training on how to investigate various types of criminal violations including white collar crimes such as identity fraud, wire fraud, mail fraud, money laundering, and crimes involving public corruption. I also

graduated from Saint Anselm College with a Bachelor's Degree in Criminal Justice (2000).

3.      The information set forth in this affidavit has been derived from a joint investigation by the HUD/OIG, the Department of Homeland Security, Homeland Security Investigations ("HSI"), and the Social Security Administration, Office of Inspector General ("SSA/OIG"). This affidavit is based on my personal knowledge and experience, information obtained from other sources, including records obtained by grand jury subpoena, information from other law enforcement officers and agents, and information obtained from non-law enforcement witnesses. This affidavit does not detail all of the facts known to me regarding this matter, but instead relates only those facts that I believe are necessary to establish the requisite probable cause in support of a criminal complaint seeking an arrest warrant for NOEMI MEJIA ("MEJIA") on the charges of False Representation of a Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B), and Theft of Government Funds, in violation of 18 U.S.C. § 641 ("TARGET OFFENSES").  This affidavit also sets forth facts I believe are sufficient to establish probable cause in support of the issuance of a warrant to search the premises known as 9 Ruggles Street, Apartment 3, Roxbury, Massachusetts, as more fully described in Attachment A, for the items set forth in Attachment B.

<u>Boston Housing Authority and HUD Section 8 Housing Choice Voucher Program</u>

4.       Among other things, HUD is responsible for providing subsidized housing for low-income individuals and families in the form of Section 8 certificates or housing choice vouchers. At times pertinent to this affidavit, the Boston Housing Authority ("BHA"), a HUD-funded program, provided low income, subsidized housing for qualified residents in and around Boston.  The BHA receives federal assistance pursuant to HUD's Section 8 Housing Choice Voucher Program.

5.      Under HUD's Section 8 Housing Choice Voucher Program, qualifying individuals with low income obtain rental housing in the private market subject to guidelines set by HUD, and receive rental assistance from HUD. Participants in the program pay a certain percentage of their income toward the rent, while the Section 8 housing assistance supplied by HUD pays the remainder of the rent to the landlord.

6.      According to federal regulations, eligibility for federal housing assistance is limited to U.S. citizens and individuals who have eligible immigration status.

7.      Initially, when an individual applies to the Section 8 Program, s/he must sign a certification for every household member either claiming status as a U.S. citizen or status as an eligible alien, and provide supporting documentation. At least one household member must be a Citizen or Eligible Non-Citizen to qualify for Section 8 housing assistance.

INVESTIGATION SUMMARY

8.      In or about February 2003 through in or about January 2016, an individual, later identified as MEJIA, used the identity of another person ("I.M.M.M.," Social Security number xxx-xx-6324 and date of birth xx/xx/1971 ("Victim")) to apply for and fraudulently obtain federal Section 8 rental subsidies totaling approximately $135,597.[1]

THE INVESTIGATION

  BHA Submissions

9.      On or about August 13, 2001, an individual, later identified as MEJIA, applied for the HUD Section 8 Program in Victim's name, using Victim's date of birth. On or about February 5, 2002, MEJIA submitted a document signed in Victim's name entitled

---

[1] The identity of Victim is known to the Government, but only the initials "I.M.M.M." are used in this affidavit in an effort to protect Victim's privacy.

"Declaration of Citizenship or Eligible Immigration Status" in which MEJIA claimed to be a citizen, naturalized citizen, or national of the United States. In support of her application, MEJIA submitted a birth certificate from Puerto Rico for Victim, showing a date and place of birth as xx/xx/ 1971, Ponce, Puerto Rico. MEJIA also submitted a Social Security card in the name of Victim, bearing Social Security number xxx-xx-6324.

10.     In 2003, MEJIA, using Victim's name and identifiers, was admitted into the BHA Section 8 program and in February 2003, the BHA began making Section 8 housing assistance payments on behalf of MEJIA using Victim's name.

11.     On an annual basis from in or about October 2007 through in or about November 2015, MEJIA submitted BHA forms entitled "Recertification Questionnaire" in the name of, and using the date of birth and Social Security number of, Victim. The bottom of this BHA form states, in part, "I understand that giving false statements or information can be grounds for punishment under federal and state laws. I also understand that giving false information or failing to provide complete information can be grounds for termination of housing assistance. Signed under the pains and penalties of perjury."

12.     During the same timeframe, MEJIA submitted BHA forms entitled "Family Obligations of the Housing Choice Voucher Program" or "Family Obligations as Listed in the Section 8 Certificate and Voucher Program" in the name of, and using the personal identifiers of, Victim. These documents state, in pertinent part, "The family must supply any information that the BHA or the Department of Housing and Urban Development (HUD) determines necessary in the administration of the program, including submission of required evidence of Citizenship or eligible immigration status as required by federal regulations. The family must disclose and verify social security numbers and must sign the

consent forms for obtaining information."

<u>BHA Interviews and the true I.M.M.M.</u>

13.     On January 10, 2018, I participated in an interview of Chris Sleison ("Sleison"), BHA Leasing Officer. According to Sleison, during the annual recertification process for 2015, the person that he knew as "I.M.M.M." signed forms granting consent to the BHA to conduct further queries to determine her eligibility status for the Section 8 Program. Sleison queried the Enterprise Income Verification ("EIV") system utilizing the Social Security number "I.M.M.M." provided, xxx-xx-6324, and the EIV system identified an individual by that name, with that Social Security number, earing income from employment with a company in Puerto Rico. The person known to BHA as "I.M.M.M." reported only earned income from Longevity Care, Inc., in Newton Center, Massachusetts, and no earned income from Puerto Rico. Sleison sent a verification letter to the company in Puerto Rico, seeking information regarding employment dates and earned income for "I.M.M.M." Thereafter, the BHA received a telephone call from a woman who identified herself as "I.M.M.M." who lived and worked in Puerto Rico.

14.     In December 2017, I interviewed Peggy Daly ("Daly"), BHA Fraud Investigator. According to Daly, the BHA received a letter from "I.M.M.M.," stating that she is the "true" "I.M.M.M." and providing copies of a Puerto Rico Driver's License including a photograph, license number xxx7867, and a copy of a Social Security card containing the number xxx-xx-6324. "I.M.M.M." provided her address in Puerto Rico.

15.     Thereafter, Daly sent two letters to the person purporting to be "I.M.M.M." living in a HUD subsidized residence in Massachusetts, MEJIA, noting that there was a discrepancy with her identification documents and scheduling two dates to meet at the BHA.

The individual purporting to be "I.M.M.M." did not appear at either of the scheduled meetings. Instead, Daly received a telephone call from an unknown female informing Daly that "I.M.M.M." was giving up her BHA Section 8 voucher and returning to Puerto Rico due to a family member's medical emergency. Daly requested that the caller tell "I.M.M.M." to send a letter relinquishing her BHA Section 8 Voucher. In February 2016, the BHA received a letter from a person purporting to be "I.M.M.M." stating she was withdrawing from the BHA Section 8 Program. After receiving the letter, Daly contacted "I.M.M.M.'s" employer of record with the BHA, Longevity Care, Inc., and a manager confirmed that "I.M.M.M." continued to work there and had not left her employment.

16. On January 21, 2018, HSI Special Agents interviewed the true "I.M.M.M." at the Ponce, Puerto Rico HSI office. During the interview, the true "I.M.M.M." produced a Puerto Rico Driver's License bearing her name, photograph, and license number xxx7867. She also produced her Social Security card bearing her name and Social Security number, xxx-xx-6324. According to the true "I.M.M.M.," she has resided in Puerto Rico her whole life and does not own any property other than her current home in Puerto Rico. On separate trips, she visited friends in Florida and went to New York City for a couple of days. She has never visited, or worked in, Massachusetts. She has never been arrested or sold her identity.

17. Social Security Administration, Office of Inspector General ("SSA/OIG") Special Agent Kyle Zgraggen confirmed that Social Security number xxx-xx-6324 is a valid Social Security number that was assigned in 1977 to "I.M.M.M." with a date of birth xx/xx/1971 and place of birth Ponce, Puerto Rico.

<u>MEJIA'S Other Use of the "I.M.M.M." Identity</u>

18. On March 1, 2004, the Massachusetts Registry of Motor Vehicles ("RMV") issued

a Massachusetts Driver's License, license number xxxxx3998, to "I.M.M." with the date of birth xx/xx/1971 and Social Security number xxx-xx-6324. The license was renewed on July 23, 2008, and a photograph of the individual associated with the renewal application was taken by RMV staff. On February 3, 2009, a duplicate Massachusetts Driver's License was issued to "I.M.M." with the date of birth xx/xx/1971, Social Security number xxx-xx-6324, and the license number xxxxx3998. The residential address was listed as 70 Bragdon Street, Apartment 1, Roxbury, Massachusetts 02119, the address of the most recent BHA Section 8 subsidized apartment rented by "I.M.M.M."

      Identification of MEJIA

19.      In January 2018, Erin Dolan, Intelligence Analyst, Department of State, sent a request for a facial recognition search against the Cedula database to the Overseas Criminal Investigations ("OCI") Santo Domingo office for assistance to identify an individual purported to be a Dominican National. The request included a copy of the photograph of the individual who renewed the Massachusetts Driver's License in the name of "I.M.M." in July 2008. The facial recognition match identified the individual as potentially being "NOEMI MERCEDES MEJIA MARCANO" with a date of birth of xx/xx/1968, and Dominican Republic Cedula identification number of xxx-xxxx551-3.

20.      I know based on my training and experience that a Cedula is a national identity document issued to adult residents of the Dominican Republic and is used for official transactions including, but not limited to, voting in elections. I believe that the individual pictured in the Cedula, MEJIA, appears to be the same person depicted in the photograph on the Massachusetts Driver's License containing license number xxxxx3998 and the name "I.M.M."

Surveillance

21.     Based on the investigation and information discovered by means of social media, I learned that MEJIA might be attending an event in South Boston, Massachusetts on March 26, 2018.  In the evening of March 26, 2018, I, along with other law enforcement officials, conducted surveillance in South Boston, Massachusetts in an attempt to locate MEJIA.  While conducting surveillance, I observed a gray Nissan Rogue ("Rogue") bearing Massachusetts license plate 25RW81 park on Dorchester Street.  That vehicle is registered with the Massachusetts RMV to the individual "I.M.M.," with the date of birth xx/xx/1971, and the Massachusetts Driver's License number xxxxx3998 (see paragraph 18).

22.     Law enforcement observed three individuals exit the Rogue.  We believed one of the individuals was MEJIA based on her likeness to the photograph depicted on the Massachusetts Driver's License containing license number xxxxx3998 and the name "I.M.M.," and the photograph on the Dominican Republic Cedula, identification number xxx-xxxx551-3.  The three individuals, including MEJIA, entered a building on Dorchester Street.  Some time later, the same three individuals exited the building, got back into the Rogue, and departed the area.  Law enforcement followed the Rogue and observed the individual believed to be MEJIA drop off the two passengers at apartment buildings in Boston.  A short time later, law enforcement observed MEJIA park the Rogue on Ruggles Street in Roxbury, Massachusetts.  Law enforcement observed MEJIA enter an apartment building, utilize a key to open a gated entry door at 9 Ruggles Street, Roxbury, Massachusetts, and walk up a staircase.

23.     On March 27, 2018, I conducted surveillance at 9 Ruggles Street.  At approximately 5:50 a.m., I observed the Rogue parked in the same place on Ruggles Street in Roxbury,

Massachusetts, where it was parked the night before. Approximately two hours later, I observed MEJIA exit the apartment building, walk to the Rogue, enter the driver's seat, and drive away.

### HUD Database Query and Tenant File Review

24. A review of information contained in a HUD database revealed that several apartments within the building located at 9 Ruggles Street, Roxbury, Massachusetts are HUD subsidized, including Apartment 3. The HUD database query showed that "NOEMI MEJIA," with a date of birth of xx/xx/1968, resides in a HUD subsidized unit at 9 Ruggles Street, Roxbury, Massachusetts, namely, Apartment 3.

25. MEJIA'S tenant file with the Metropolitan Boston Housing Partnership ("MBHP") reflects that MEJIA began leasing Apartment 3 at the TARGET PREMISES on or about July 15, 2017, and the lease is in current status. The tenant file contained a photocopy of a Dominican Republic birth certificate, which documented that "NOEMI MEJIA" was born on xx/xx/1968 in Bani, Dominican Republic. The tenant file also contained a Massachusetts Department of Transitional Assistance Authorized Identification card ("MASS EBT") that contained the name "NOEMI MEJIA," with a date of birth of xx/xx/1968 and a photograph. I believe that the individual pictured on the MASS EBT card is the same individual depicted in the photograph on the Massachusetts Driver's License containing license number xxxxx3998 and the name "I.M.M." I believe that the individual pictured on the MASS EBT card is the same individual depicted in the photograph on the Dominican Republic Cedula, identification number xxx-xxxx551-3, in the name "NOEMI MEJIA."

26. Based on the foregoing, and my training and experience, I believe MEJIA, who has utilized and continues to utilize the identity of "I.M.M.M.," Social Security number xxx-xx-

6324, and date of birth xx/xx/1971, is residing in Apartment 3 at 9 Ruggles Street, Roxbury, Massachusetts.

27.     Based on my training and experience, I know that people often keep identification documents and other evidence of their identity on their persons (*e.g.,* in their wallets or in their pockets).

28.     Based on my training and experience, I know that people often keep identification documents and other evidence of their identities for long periods, sometimes years, and retain such documents even when they depart a given residence.  Such documents include Social Security cards, passports, tax returns, legal documents, utility bills, phone bills, health insurance or prescription cards, medical records, marriage licenses, family records, scrapbooks, photographs (physical or digital), diplomas and other school records, birth certificates, immunization records, bank records, credit card statements, personal correspondence, and books or mementos on which they have inscribed their names.

## CONCLUSION

29.     Based on the facts as set forth in this affidavit, I believe probable cause exists to support a complaint charging MEJIA with violating 42 U.S.C. § 408(a)(7)(B), False Representation of a Social Security Number, on or about November 17, 2015, and Theft of Government Funds, in violation of 18 U.S.C. § 641, from on or about February 15, 2003, through on or about January 31, 2016.

30.     I further believe probable cause exists to support a search warrant to search and seize 9 Ruggles Street, Apartment 3, Roxbury, Massachusetts, for evidence, fruits, and instrumentalities of the TARGET OFFENSES, as described in Attachment B; and,

31. I believe probable cause exists to support a search warrant to search and seize NOEMIA MEJIA, for evidence, fruits, and instrumentalities of the TARGET OFFENSES, as described in Attachment B.

Sworn to under the pains and penalties of perjury.



_____
Jessica M. Thompson
Special Agent
Department of Housing and Urban Development

Subscribed and sworn to before me this 9th day of April, 2018.

_____
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

**Attachment A**

The premises to be searched is 9 Ruggles Street, Apartment 3, Roxbury, Massachusetts 02119.  A photograph of the apartment building appears below.  The front entrance to the building contains a black metal gate with a gold-colored "9" on the gate.  A mailbox located inside the building on the entry floor bearing the number "3" is labeled with the names "NOEMI MEJIA" and "YARINELIS PEREZ."  Apartment 3 is located on the second floor of the building.  The door to the apartment is marked with the number "3."





**Attachment B**

Items to Be Seized

All records and tangible objects that constitute evidence, fruits, or instrumentalities of violations of Title 42, United States Code, Section 408(a)(7)(B) (False Representation of a Social Security Number), and Title 18, United States Code, Section 641 (Theft of Public Money) including:

1. Identification documents belonging to any person using the name "I.M.M.," or any variations thereon, including but not limited to, driver's licenses, state identification cards, Social Security cards, birth certificates, employee identification cards or badges, library cards, passports, visas, bank cards, credit cards, and insurance cards.

2. Social Security documents and records belonging to any person using the name "I.M.M..," or any variations thereon.

3. All records reflecting the name, identity, date of birth, Social Security number, or other personal identifying information of "I.M.M.," or any variations thereon.

4. Identity documents, paperwork or any other objects, which appear to contain a photograph or likeness of the subject of this investigation.

5. Identification documents belonging to any person using the name NOEMI MEJIA, or any variations thereon, including but not limited to, driver's licenses, state identification cards, birth certificates, employee identification cards or badges, library cards, passports, visas, bank cards, credit cards, and insurance cards.

6. Records and tangible objects relating to the occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, insurance documentation, rent payments [to include money orders], rent receipts, check registers, canceled mail, leases, rental agreements).